NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                                :
ADAN DURAN,                     :
                                :
            Plaintiff,          :           Hon. Dennis M. Cavanaugh
                                :
      v.                        :           **OPINION**
                                :
                                :           Civil Action No: 09-3812 (DMC)
MICHAEL J. ASTRUE,              :
COMMISSIONER OF SOCIAL          :
SECURITY,                       :
                                :
            Defendant.          :
_____:


<u>DENNIS M. CAVANAUGH, U.S.D.J.</u>:

  This matter comes before the Court upon the appeal of Adan Duran ("Plaintiff") from the

final decision of the Commissioner of Social Security ("Commissioner"), denying Plaintiff's claim

for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles

II and XVI of the Social Security Act ("Act").  The Court has jurisdiction over this matter pursuant

to 42 U.S.C. §§ 405(g) and 1383(c)(3).  No oral argument was heard pursuant to Rule 78 of the

Federal Rules of Civil Procedure.

  As detailed below, the final decision entered by the Administrative Law Judge ("ALJ") is

**affirmed**.

# I. BACKGROUND[1]

## A. PROCEDURAL HISTORY

On August 30, 2005, Plaintiff filed an application for DIB and SSI benefits alleging disability beginning September 22, 2003. (Tr. 17). The applications were denied initially on November 2, 2005, and, upon reconsideration, on December 21, 2005. Id. Thereafter, Plaintiff filed a timely written request for a hearing. Plaintiff appeared and testified on March 20, 2007. Following a post-hearing consultative examination ordered by the ALJ, a supplemental hearing was held on August 8, 2007, before ALJ Joel H. Friedman. At the close of the second hearing, the record was left open for twenty-one days to allow Plaintiff's attorney to obtain additional medical evidence from Dr. Albert Mylod, a non-treating physician. When nothing was received, the ALJ issued an unfavorable decision on December 26, 2007, (Tr. 14-16), finding that Plaintiff was not disabled in accordance with 20 C.F.R. Part 404, Subpart P, Appendix 1, (Tr. 20). Appeals Council review was sought on February 26, 2008, (Tr. 12), and on May 31, 2009 the Appeals Council found no grounds to review, (Tr. 6-8). District Court action was thereafter timely commenced and this matter is now properly before the Court.

## B. FACTUAL HISTORY

### 1. The Findings of the Administrative Law Judge

ALJ Friedman made the following eleven findings regarding Plaintiff's applications for DIB and SSI: (1) Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2008; (2) Plaintiff has not engaged in substantial gainful activity since his application for DIB and SSI on September 22, 2003; (3) Plaintiff's degenerative disc disease is a severe

---

[1] The facts set-forth in this Opinion are taken from the Parties' statements in their respective briefs.

impairment; (4) Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) Plaintiff has the residual functional capacity to perform work involving lifting and carrying objects weighing up to 20 pounds, and sitting, standing and walking up to six hours in an eight-hour workday; (6) Plaintiff is unable to perform any past relevant work; (7) Plaintiff was born on December 28, 1961, and was 41 years old, which is defined as a younger individual age 18-49, on the date the applications for DIB and SSI were filed; (8) Plaintiff is illiterate but is able to communicate in English; (9) transferability of job skills is not an issue because the claimant's past relevant work is unskilled; (10) considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that he can perform; and (11) Plaintiff has not been under a disability, as defined in the Social Security Act, since September 22, 2003, the date the application was filed. (Tr. 19-25).

## 2. Plaintiff's Medical History and Evidence

Plaintiff alleges that he has been disabled since September 22, 2003, after the truck he was driving flipped over and hit a telephone pole, causing him to injure his neck, low back and elbow. (Tr. 134, 273). Plaintiff's medical history and the evidence pertaining to his impairment are summarized below.

### I. Initial Emergency Room Examination

Plaintiff was taken to the emergency room at the Robert Wood Johnson University Hospital on the same day as the accident. Dr. Davis, a treating physician, indicated in his report that Plaintiff's condition was stable but that he had paravertebral tenderness and midline tenderness at the C5-6 level in his neck, lumbar paravertebral tenderness in his back, and abrasion to the left elbow

from no crepitus. (Tr. 134).  Plaintiff was treated with Flexeril, Motrin and Percocet, (Tr. 135), and was not kept overnight because his condition had improved, (Tr. 134).  There was no evidence of serious head, neurologic, chest or abdominal injuries. (Tr. 134).  Cervical x-rays and a cervical CAT scan were negative. (Tr. 139-142).

### ii. *Chiropractic Examination*

From October 24, 2003 through March 10, 2004, Plaintiff was under the care of a chiropractor, Dr. Addesa, at the Union Pain Relief Center. (Tr. 175).  Plaintiff complained of constant severe headaches, acute severe neck pain, acute pain in the low back, pain, numbness and weakness down the left leg and difficulty sleeping.  Id.  Following an examination, Dr. Addesa stated in her report that Plaintiff was suffering from a post traumatic sprain/strain of the cervicodorsal spine with resultant central disc herniation at the C3-4 level approaching the ventral surface of the spinal cord and cervical myalgia, as well as from a post traumatic sprain/strain of the lumbosacral spine with resultant small central disc herniation at the L4-5 level producing a focal ventral dural deformity, and a posterior disc bulging at the L5-S1 level just abutting the right S1 nerve root sheath. (Tr. 177).  Dr. Addesa reported that this data was consistent with the type of injury suffered by Plaintiff and noted that Plaintiff's strength was equal and intact bilaterally, reflexes in the lower extremities were within the normal range, and Plaintiff was able to toe walk, heel walk, mount and dismount the examination table and to move from the supine to prone position without difficulty. (Tr. 176-77).  Plaintiff had a variety of manipulative treatments directed at his neck and back.  Dr. Addesa, however, provided no prognosis as to Plaintiff's health pending further treatment. (Tr. 177).

-4-

*iii. MRI Results*

On November 25, 2003, a cervical MRI administered at the Cranford Diagnostic Imaging Center that showed loss of disc height at the C2-3 through C5-6 levels, decreased disc signal at the C2-3 through C6-7 levels consistent with degenerative desiccation, central disc herniation C3-4 approaching the ventral surface of the spinal cord, posterior vertebral body osteophyte disc complex C4-5, C5-6 and C6-7 resulting in dural deformities, left-sided neutral foraminal stenosis C4-5 secondary to facet joint hypertrophy, and right-sided neutral foraminal stenosis C5-6 secondary to vertebral body osteophyte disc complex. (Tr. 194, 197). A lumbar MRI, on the same date, showed a small central disc herniation at the L4-5 level producing a focal ventral dural deformity and posterior disc bulging L5-S1 just abutting the right S1 nerve root sheath. (Tr. 195-96).

*iv. Emergency Room Examination*

On May 21, 2004, Plaintiff was seen at the Union Hospital emergency room for complaints of pain in the lower back radiating to the posterior thigh and buttocks. (Tr. 164). Plaintiff was treated with Toradol, Valium and Percocet for minimal relief. Plaintiff was not admitted to the hospital because his condition improved during the emergency room evaluation. Id. He was given additional Valium and Dilaudid with moderate relief and side effects. Plaintiff had minimal gastric relief following Reglan intramuscular injection and total relief following Phenergan IV. Id.

*v. Orthopedic Examination by Dr. Tiger*

Plaintiff was referred by his then attorney to Dr. Arthur Tiger for an orthopedic examination in connection with a Workers' Compensation claim on July 27, 2004. (Tr. 147). During the examination, Plaintiff complained of a constant discomfort in the lower back as well as pain,

discomfort and numbness radiating into his left leg. (Tr. 198). He could not turn, twist, lift or bend and had difficulty squatting and kneeling. He had lost a lot of flexibility and mobility in his back and had limited mobility when moving his neck in any direction. Plaintiff also complained that his neck pain radiated into his right shoulder. Id.

Dr. Tiger reported that, as a result of the accident, Plaintiff had the residuals of a chronic cervical strain syndrome with chronic myofascitis with aggravated arthritis, a disc herniation at the L3-4 level, and a clinical right sided radiculopathy. Dr. Tiger estimated a disability of 35% of partial loss. (Tr. 199). Dr. Tiger also noted that Plaintiff has the residuals of a chronic lumbosacral strain syndrome with chronic myofascitis as well as a bulging L5-S1 disc for which Dr. Tiger estimated a disability of 35% of partial loss. Id. Thus, in total, it was Dr. Tiger's opinion that Plaintiff was 70% disabled. Id.

### vi. *Orthopedic Examination by Dr. Fernando*

To clarify the severity and nature of his physical condition, Plaintiff saw Dr. Justin Fernando on October 25, 2005 for an orthopedic examination. (Tr. 148). During this examination, Plaintiff complained of pain in his lower back that radiated down to his left leg, and pain in the neck that stayed stationary and did not radiate. Plaintiff estimated the severity of the pain in both his lower back and his neck to be about a seven out of ten through most of the day, with times when the pain worsened to greater than a seven. Id. Plaintiff told Dr. Fernando that he lived with his wife and daughter and did normal things around the apartment and for personal hygiene, such as cooking, shopping, showering, bathing and dressing. Id.

Dr. Fernando reported that Plaintiff appeared to be in no acute distress. He could rise from a chair, walk on heels and toes without difficulty, squat fully, used no assistive device, and required

no help changing for the examination or getting on or off the examination table. (Tr. 149). Plaintiff had full flexion and extension of the cervical spine and full range of movement ("ROM") of shoulders, elbows, forearms, wrists and fingers bilaterally, as well as full ROM of hips, knees and ankles bilaterally. Id. Dr. Fernando observed no joint inflammation, effusion or instability. Plaintiff had five out of five strength in proximal and distal muscles. Id. Limitation of flexion was at about sixty degrees at the thoracic and lumbar spines. Id. The extension was normal and no spinal or paraspinal tenderness was observed. Id. The left sacroiliac ("SI") joint showed moderate tenderness. Id. In the upright position, Plaintiff was able to raise both legs to ninety degrees. Id. Dr. Fernando concluded that Plaintiff has chronic lower back pain (degenerative disc disease of the lumbosacral spine with subjective lumbar radiculopathy) and degenerative disc disease of the cervical spine with subjective radiculopathy. (Tr. 150). Dr. Fernando further concluded that Plaintiff has mild limitation for bending and possibly for lifting and carrying weights. Id. In general, Plaintiff's prognosis was fair. Id.

### vii. Disability Determinations Services ("DDS") Assessment

In a physical Residual Functional Capacity ("RFC") assessment conducted on November 2, 2005, Dr. Barasch indicated that Plaintiff retained the RFC to perform medium exertional activities. (Tr. 153-54). The report further indicated that Plaintiff could lift and carry, including upward pulling, up to fifty pounds occasionally and up to twenty-five pounds frequently. (Tr. 153). DDS also reported that Plaintiff could stand, walk or sit, with normal breaks, about six hours in an eight-hour work day. Id. He could push or pull, including operation of hand and foot controls, for an unlimited amount of time, other than as shown in the lift and carry category. Id. No postural, manipulative, visual, communicative or environmental limitations were established. (Tr. 154-55).

Dr. Barasch concluded that Plaintiff was partially credible, indicating in his report that Plaintiff's statement regarding back and leg pain was credible and that the statement with respect to limitations regarding the inability to lift, carry and push was credible but not to the degree alleged. (Tr. 157).

### viii. *Orthopedic Examination Ordered by ALJ Friedman*

ALJ Friedman arranged for a post-hearing orthopedic examination with Dr. Betty Vekhnis on May 2, 2007, because there was no medical evaluation since 2005. (Tr. 277-78). During the examination, Plaintiff complained of his inability to work due to constant neck and low back pain. (Tr. 200). The neck pain was described as nonradiating and the pain was getting worse with cold and rainy weather. Id. The low back pain was described as excruciating, rated 6 or 7 out of 10, which went down the left leg, mostly around the knee. Id. The bottom of his foot felt numb and Plaintiff complained of difficulty sitting, standing for over ten to fifteen minutes, and of his inability to drive long distances. Id. Plaintiff informed Dr. Vekhnis that he had only chiropractic treatments, was not referred for pain management or orthopedic care and did not have any recent treatments. Id. Plaintiff took Advil, Tylenol and over-the-counter Motrin once or twice a day. Id.

Dr. Vekhnis reported that Plaintiff did not appear to be in acute distress, did not utilize an assistive device for ambulation, was able to walk on heels and toes, squat and recover independently although with complaints of discomfort, and mount and dismount the examination table on his own. Id. Examination of cervical and lumbar spines showed no vertebral tenderness and no paraspinal muscle spasm. Id. Dr. Vekhnis noted tenderness at left lower facet joints. Straight leg raises ("SLR") were negative bilaterally in sitting, however, Plaintiff complained of back pain on SLR in supine at less than thirty degrees. Id. Dr. Vekhnis further reported that Plaintiff can lift or carry up to ten pounds continuously, eleven to twenty pounds frequently and above twenty-one pounds

occasionally. (Tr. 204).  Plaintiff can walk and sit at one time without interruption for four hours and stand for two hours. (Tr. 205).  In an eight-hour work day, Plaintiff can sit for six hours and stand and walk for four hours.  Id.  Dr. Vekhnis noted that Plaintiff can climb stairs or ramps continuously and occasionally climb ladders or scaffolds, balance, stoop, kneel, crouch or crawl. (Tr. 207).  Dr. Vekhnis also noted that Plaintiff can never be exposed to unprotected heights; can occasionally be exposed to moving mechanical parts, humidity and wetness, extreme cold and vibrations; can continuously operate a motor vehicle; and be continuously exposed to dust, odors, fumes, pulmonary irritants and extreme cold. (Tr. 208).  Finally, the report indicates that Plaintiff's physical impairments do not prevent him from shopping, traveling without a companion or assistance, ambulating without the use of a wheelchair or a walker, walking a block at a reasonable pace on rough or uneven surfaces, standing in public transportation, climbing a few steps at a reasonable pace with the use of a single hand rail, preparing a simple meal to feed himself, caring for personal hygiene, and sorting and handling paper and files. (Tr. 209).

### 3. Plaintiff Adan Duran's Testimony

At a hearing before the ALJ on March 20, 2007, Plaintiff indicated that he was born in El Salvador, where he finished a year out of school,[2] and came to the United States at the end of 1989. (Tr. 252).  Plaintiff explained that he had no other education and learned English by listening, watching television and working. (Tr. 253).  Plaintiff testified that the last time he worked was September 22, 2003, the day of the accident, (Tr. 256), and that since the accident he experienced constant pain, could not stay in the same position and had to constantly move to relieve the pain,

---

[2] Plaintiff explained that a year out of school at El Salvador would be equivalent to high school in the United States. (Tr. 252).

feeling more pain the more he moved.. (Tr. 273). He stated that he had difficulties sleeping at night and kept turning in bed because he was very uncomfortable. (Tr. 272).

When asked to explain why he thinks he cannot work, (Tr. 253), Plaintiff testified that he can no longer drive a truck because he cannot sit for more than thirty minutes without getting a burning sensation mixed with pain in his lower back, (Tr. 254). He further maintained that he consistently has pain in the lower back and left buttock. (Tr. 269). Plaintiff explained that he cannot sit or stand for long time, (Tr. 254), and that after standing for ten minutes he would have to lay down and to "sustain" his head, (Tr. 256). When sitting down, Plaintiff explained that he can only be comfortable if his neck is supported by a pillow because his head feels very heavy. (Tr. 268). He also indicated that he gets headaches, especially when he turns his head quickly, which causes a shooting pain over his right eye, (Tr. 270), as often as twice in one hour, depending on the movement, (Tr. 272). Plaintiff stated that before driving a truck, he worked for ten years as a machine operator fixing aluminum reflectors, spending all day on his feet. (Tr. 264). His only sitting job was driving a truck, which he did for approximately five years. (Tr. 264-65).

Plaintiff explained that he was taking over-the-counter medication, such as extra strength Tylenol or Ibuprofen, almost every day in the morning or at night before going to bed. (Tr. 260-61). When it rains, Plaintiff takes two Tylenol because his entire body is in pain. (Tr. 261). Plaintiff is married and lives in an apartment with his wife and daughter. (Tr. 257-58). His daily activities consist of taking his daughter to school, picking her up in the afternoon and helping her with some homework; he is incapable of doing any housework. (Tr. 267).

## II. <u>STANDARD OF REVIEW</u>

A reviewing court will uphold the Commissioner's factual decisions if they are supported by

"substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); <u>Sykes v. Apfel</u>, 228 F.3d 259, 262 (3d Cir.

2000).   Substantial evidence is "more than a mere scintilla . . . but may be less than a

preponderance." <u>Woody v. Sec'y of Health & Human Servs.</u>, 859 F.2d 1156, 1159 (3d Cir. 1988).

It "does not mean a large or considerable amount of evidence, but rather such relevant evidence

which, considering the record as a whole, a reasonable person might accept as adequate to support

a conclusion." <u>Pierce v. Underwood</u>, 487 U.S. 552, 565 (1988) (citation omitted).  Not all evidence

is considered "substantial."   For instance,

> [a] single piece of evidence will not satisfy the substantiality test if
> the [Commissioner] ignores, or fails to resolve, a conflict created by
> countervailing evidence.   Nor is evidence substantial if it is
> overwhelmed by other evidence – particularly certain types of
> evidence (e.g., that offered by treating physicians) – or if it really
> constitutes not evidence but mere conclusion.

<u>Wallace v. Sec'y of Health & Human Servs.</u>, 722 F.2d 1150, 1153 (3d Cir. 1983) (quoting <u>Kent v.</u>

<u>Schweiker</u>, 710 F.2d 110, 114 (3d Cir. 1983)).  The ALJ must make specific findings of fact to

support his ultimate conclusions. <u>Stewart v. Sec'y of Health, Educ. & Welfare</u>, 714 F.2d 287, 290

(3d Cir. 1983).

The "substantial evidence standard is a deferential standard of review." <u>Jones v. Barnhart</u>,

364 F.3d 501, 503 (3d Cir. 2004).  As such, it does not matter if this Court "acting *de novo* might

have reached a different conclusion" than the Commissioner. <u>Monsour Med. Ctr. v. Heckler</u>, 806

F.2d 1185, 1190-91 (3d Cir. 1986) (quoting <u>Hunter Douglas, Inc. v. NLRB</u>, 804 F.2d 808, 812 (3d

-11-

Cir. 1986)).  "The district court . . . is [not] empowered to weigh the evidence or substitute its

conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992)

(citing Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984)).  A Court must nevertheless "review

the evidence in its totality." Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (citing

Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984)).  In doing so, the Court "must 'take into account

whatever in the record fairly detracts from its weight.'" Id. (quoting Willibanks v. Sec'y of Health

& Human Servs., 847 F.2d 301, 303 (6th Cir. 1988)).

To properly review the findings of the ALJ, the court needs access to the ALJ's reasoning.

Accordingly,

> Unless the [Commissioner] has analyzed all evidence and has
> sufficiently explained the weight he has given to obviously probative
> exhibits, to say that his decision is supported by substantial evidence
> approaches an abdication of the court's duty to scrutinize the record
> as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (quoting Arnold v. Sec'y of Health, Educ. &

Welfare, 567 F.2d 258, 259 (4th Cir. 1977)).  A court must further assess whether the ALJ, when

confronted with conflicting evidence, "adequately explain[ed] in the record his reasons for rejecting

or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987)

(citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  If the ALJ fails to properly indicate why

evidence was rejected, the court is not permitted to determine whether the evidence was discredited

or simply ignored.  See Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citing

Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981)).

### III. <u>APPLICABLE LAW</u>

#### A. THE FIVE-STEP PROCESS

A claimant's eligibility for benefits is governed by 42 U.S.C. § 1382. A claimant is considered disabled under the Social Security Act if he or she is unable to "engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A). A claimant bears the burden of establishing his or her disability. <u>Id.</u> § 423(d)(5).

To make a disability determination, the Commissioner follows a five-step process pursuant to 20 C.F.R. § 416.920(a). Under the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(b). Substantial gainful activity is work that involves doing significant and productive physical or mental duties, and is done (or intended) for pay or profit. 20 C.F.R. § 416.972. If the claimant establishes that she is not currently engaged in such activity, the Commissioner then determines whether, under step two, the claimant suffers from a severe impairment or combination of impairments. 20 C.F.R. § 416.920(a)(4)(ii). The severe impairment or combination of impairments must "significantly limit[] [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920©. The impairment or combination of impairments "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 416.909. If the Commissioner finds a severe impairment or combination of impairments, he then proceeds to step three, where he must determine whether the claimant's impairment(s) is equal to or exceeds one of those included in the Listing of Impairments in Appendix 1 of the regulations ("Listings"). 20 C.F.R. § 416.920(d). Upon such a

-13-

finding, the claimant is presumed to be disabled and is automatically entitled to benefits.  Id.  If, however, the claimant does not meet this burden, the Commissioner moves to the final two steps.

Step four requires the Commissioner to determine whether the claimant's residual functional capacity sufficiently allows her to resume her previous work.  20 C.F.R. § 416.920(e).  If the claimant can return to her previous work, then she is not disabled and therefore cannot obtain benefits.  Id.  If, however, the Commissioner determines that the claimant is unable to return to her prior work, the analysis proceeds to step five.  At step five, the burden shifts to the Commissioner, who must find that the Claimant can perform other work consistent with her medical impairments, age, education, past work experience and residual functional capacity.  20 C.F.R. § 416.920(g). Should the Commissioner fail to meet this burden, the claimant is entitled to social security benefits. 20 C.F.R. § 416.920(a)(4)(v).

### B.  THE REQUIREMENT OF OBJECTIVE MEDICAL EVIDENCE

Under the Act, disability must be established by objective medical evidence.  "An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require."  42 U.S.C. § 423(d)(5)(A).  Notably, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section."  Id.  Specifically, a finding that one is disabled requires:

> [M]edical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph . . . would lead to a conclusion that the individual is under a disability.

-14-

Id. Credibility is a significant factor. When examining the record "the adjudicator must evaluate the intensity, persistence and limiting effects of the [claimant's] symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities." SSR 96-7p, 1996 SSR LEXIS 4, 1996 WL 374186 (SSA July 2, 1996). To do this, the adjudicator must determine the credibility of the individual's statements based on consideration of the entire case record. Id. The requirement for a finding of credibility is found in 20 C.F.R. § 416.929(c)(4). A claimant's symptoms, then, may be discredited "unless medical signs or laboratory findings show that a medically determinable impairment(s) is present." 20 C.F.R. § 416.929(b); see Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999).

## IV. ANALYSIS

On appeal, Plaintiff argues that the ALJ's decision should be reversed because the ALJ erred at four steps of the process: in step two, the ALJ incorrectly concluded that Plaintiff's medical impairment was not severe; in step three, the ALJ failed to find Plaintiff's combination of impairments equivalent to one of the impairments listed in Listing 1.04; in step four, the ALJ erred in finding that Plaintiff can perform the full range of light work; and in step five, the ALJ erred by relying on the medical-vocational guidelines of 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "Grid") to find that Plaintiff was not disabled (Pl. Br. 12-14). Alternatively, Plaintiff requests that this Court remand for a new hearing. Id.

The Commissioner contends that the ALJ's decision should be affirmed because the ALJ applied the correct legal standards and substantial evidence demonstrates that Plaintiff's alleged impairments did not prevent him from engaging in work that exists in significant numbers in the national economy.

### A. Severe Impairment(s) Determination - Steps 2 and 3

At the second step of the analysis, Plaintiff bears the burden of introducing sufficient evidence to establish a severe impairment or combination of impairments. Bowen v. Yuckert, 482 U.S. 137, 146-47 (1987). At the third step, the ALJ considers whether such an impairment(s) meets or equals one of the listings in Appendix 1 to Subpart P of 20 C.F.R. 404. Plaintiff contends that the ALJ's "reticent description" (Pl. Br. 12) that he only suffers degenerative disc disease fails to convey the enormity of Plaintiff's severe impairments, which include disc herniations at C3-4, osteophyte disc complex at C4-5, C5-6 and C6-7, left-sided stenosis at C4-5, disc herniations at L4-5, posterior disc bulge at L5-6 and L6-7, and radiculopathies throughout his cervical and lumbar spine (Pl. Br. 13).[3] Plaintiff further argues that degenerative disc disease is actually a "complex of severe impairments" that the ALJ did not combine to determine whether the impairments are equivalent to one of a number of impairments articulated in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. Plaintiff's arguments are without merit

In the instant case, the ALJ properly weighed the evidence and determined that Listing 1.04 of Part 404, Subpart P, Appendix 1 is not met. Listing 1.04 lists disorders of the spine. Specifically, it states that in order to be found disabled, any disorder of the spine must "result[] in compromise of a nerve root (including the cauda equina) or the spinal cord." Listing 1.04, 20 C.F.R., Part 404, Subpart P, Appendix 1 (2009). Further, Listing 1.04 enumerates additional medical findings that must be provided in order to qualify for disability, including evidence of a nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication. Id. Plaintiff's impairment "'must meet *all* of the specified medical criteria. An impairment that manifests only

---

[3] Plaintiff maintains that this evidence is based on the MRI results obtained on November 25, 2003.

some of those criteria, no matter how severely, does not qualify.'" Williams v. Sullivan, 970 F.2d 1178, 1186 (3d Cir.1992) (quoting Sullivan v. Zebley, 493 U.S. 521, 530 (1990)). In making his determination, the ALJ properly took into consideration the reports of the medical experts and determined that Plaintiff's impairments did not meet or equal the requirements of a listed impairment. Therefore, in light of meeting only some of the specified medical criteria of Listing 1.04, the ALJ's determination that Plaintiff did not meet the requirements of the Listing is supported by substantial evidence. See Zebley, 493 U.S. at 530.

### B. RESIDUAL FUNCTIONING CAPACITY DETERMINATION - STEP 4

Plaintiff argues that the ALJ's RFC determination is without evidentiary foundation (Pl. Br. 18). Specifically, Plaintiff contends that the ALJ failed to provide an explanation for his finding that "the evidence establishes that the claimant has the residual functioning capacity to perform work involving lifting and carrying objects weighing up to 20 pounds, sitting, standing and walking up to six hours in an eight hour workday" (Pl.'s Br. 22). Plaintiff argues that this finding conflicts with Dr. Tiger's findings that Plaintiff is "unable to turn, twist, lift, bend, squat or kneel." Id. Plaintiff further contends that the ALJ failed to properly analyze Plaintiff's subjective complaints of pain. (Pl. Br. 25).

Turning to the first issue, Plaintiff's argument that the ALJ failed to explain why Plaintiff can perform the full range of light work is not supported by the law of this Circuit. The ALJ is not required "to use particular language or adhere to a particular format in conducting his analysis." Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004). The only requirement is that the decision, when read in its entirety, provide sufficient development of the record and explanation of findings. Id. In this instance, the ALJ explained the evidence presented to him, weighed the evidence, and drew

-17-

conclusions as to Plaintiff's physical abilities.  See Tr. 23.  Taken as a whole, the ALJ's decision is "comprehensive and analytical," Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981), and thus provides sufficient explanation of the ALJ's determination as to the work Plaintiff can perform.

Next, Plaintiff argues that the ALJ's finding that Plaintiff has the residual functioning capacity to perform light work conflicts with Dr. Tiger's findings that Plaintiff is "unable to turn, twist, lift, bend, squat, or kneel." (Pl. Br. 22).[4]  Plaintiff further argues that the ALJ did not provide a proper basis for lending Dr. Tiger's report no significant weight,  Id. at 25-27, ignored relevant medical evidence and made his own medical judgment.  Id. at 22.  This Court disagrees.

All medical opinions must be considered, regardless of source.  20 C.F.R. §§ 404.1527(d) and 416.927(d).  "[W]hen the medical testimony or conclusions are conflicting, the ALJ is not only entitled but required to choose between them," Cotter, 642 F.2d at 705, and may not reject pertinent or probative evidence without an explanation, see Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 204 (3d Cir.2008).  See also Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (holding that where there is conflicting medical evidence exists ALJ "may choose whom to credit but cannot reject evidence for no reason or for the wrong reason" (citation and internal quotation marks omitted)).

Here, the ALJ explained that no significant weight was given to Dr. Tiger's medical opinion because the examination was undertaken for litigation purposes. (Tr. 24, 147).  This is a reasonable basis for discounting a physician's opinion.  20 C.F.R. §§ 404.1527(d) and (e), 416.927(d) and (e).  Further, the ALJ was correct in rejecting Dr. Tiger's assessment that Plaintiff is 70% partial disabled, (Tr. 24), because a statement by a medical source that an individual is "disabled" or "unable to work" is an administrative finding on an issue that is reserved to the Commissioner.  20 C.F.R. §

---

[4] In making his finding, the ALJ primarily relied on Dr. Vekhnis's medical report. (Tr. 23).

416.927(e)(1).  The ALJ ordered a consultative examination by Dr. Vekhnis in May 2007 because there was no medical evaluation since 2005. (Tr. 277-78).  Dr. Vekhnis stated that Plaintiff could perform work-related activities limited to six hours of sitting, and four hours of standing or walking in an eight hour work day. (Tr. 204-209).  The ALJ made the RFC determination based on Dr. Vekhnis's findings.  The determination of Plaintiff's RFC is the exclusive responsibility of the ALJ, 20 C.F.R. § 404.1527(e)(2), and the ALJ need only include in the RFC those limitations which he finds credible.  See Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000); see also Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir.1999).  Thus, to the extent that the ALJ found some of Plaintiff's alleged limitations less than credible, the ALJ properly excluded them from the RFC. See Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir.1999).

The argument that the ALJ did not properly assess the credibility of Plaintiff's allegations of pain and symptoms is equally unavailing (Pl. Br. 29-31).  A claimant's allegations of pain must be consistent with the objective medical evidence.  20 C.F.R. § 404.1529.  See also Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir.1999).  "Once an ALJ concludes that a medical impairment that could reasonably cause the alleged symptoms exists, he or she must . . . determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it."  Hartranft, 181 F.3d at 362; see also 20 C.F.R. § 404.1529©.

The ALJ concluded that Plaintiff had an underlying impairment that could cause some of the symptoms Plaintiff complained of. (Tr. 23).  However, the ALJ determined that Plaintiff's description of the symptoms is only partially credible and that Plaintiff could perform some light work despite his complaints of pain.  Id.  In support of his findings, the ALJ cited specific instances where Plaintiff's complaints about pain were inconsistent with the record, which included two

-19-

objective medical consultative examinations, a significant history of little or no treatment, Plaintiff's testimony that he does not take prescription medication and has not sought any pain management, and Plaintiff's testimony regarding his daily activities. Id. Thus, the ALJ's decision to discount Plaintiff's subjective complaints of pain is supported by substantial evidence.

### C. ASSESSMENT OF MEDICAL - VOCATIONAL GUIDELINES - STEP 5

Plaintiff argues that the ALJ erred at the fifth step in applying the Grid. Specifically, Plaintiff asserts that the limitations resulting from his degenerative disc disease are nonexertional and, therefore, require evidence from a vocational expert to determine whether or not his occupational base for light work has eroded, which the ALJ failed to produce. (Pl.'s Br. 38). The Court disagrees.

The Grid contains information about jobs which exist in the national economy, classified by their exertional and skill requirements. The medical-vocational guidelines take administrative notice of the existence of jobs at the sedentary, light, and medium levels of exertion. 20 C.F.R. Part 404, Subpart P, Appendix 2. If a claimant suffers only from an exertional impairment and has at least the residual functional capacity for sedentary work, the Grid will likely apply and the claimant's age, education, and past work experience will result in a mandatory finding of "disabled" or "not disabled." Exertional limitations include only seven physical activities, which the Social Security Administration ("SSA") describes as strength-related activities. Those seven physical activities are: sitting, standing, walking, lifting, carrying, pushing and pulling. 20 C.F.R. § 404.1569a(b). All other activities, no matter how physical, are nonexertional and generally are not subject to evaluation under the medical-vocational guidelines. Such nonexertional activities include, *inter alia*, reaching, handling, stooping, climbing, crawling, or crouching. 20 C.F.R. §404.1569a(c)(vi). In cases involving such nonexertional activities, the ALJ must produce vocational expert testimony

-20-

concerning the availability of jobs that a person with Plaintiff's particular characteristics can perform. Sykes v. Apfel, 228 F.3d 261 (3d Cir. 2000). For example, in Poulos v. Commissioner of Social Security, 474 F.3d 88, 94 (3d Cir. 2007), the Third Circuit held that when a claimant asserts both exertional and nonexertional impairments, the ALJ cannot rely on the Grid exclusively, but must consider other vocational evidence. In such claims, the ALJ must consider all of the relevant facts in the case, and specifically, vocational expert testimony. Jesurum v. Sec'y of the U.S. Dep't of Health & Human Servs., 48 F.3d 114, 121 (3d Cir. 1995); see also Washington v. Heckler, 756 F.2d 959, 967 (3d Cir. 1985) (holding that when both exertional and nonexertional impairments exist ALJ must rely upon vocational expert testimony to deal with nonexertional impairments).

In determining Plaintiff's RFC, the ALJ found that Plaintiff was capable of performing a full range of light work, with no additional nonexertional limitations. (Tr. 20). Dr. Vekhnis's medical opinion that Plaintiff can climb ladders or scaffolds, balance, stoop, kneel, crouch or crawl only occasionally, (Tr. 207), does not satisfy the nonexertional limitation because Plaintiff can still perform such activities occasionally. Further, Dr. Vekhnis reported that Plaintiff can lift or carry up to ten pounds continuously, eleven to twenty pounds frequently and above twenty-one pounds occasionally. (Tr. 204). The regulations define light work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds . . . The lifting requirement for the majority of light jobs can be accomplished with occasional, rather than frequent, stooping." SSR 83-10, 1983 WL 31251, at *5-6 (SSA 1983) . This is fully consistent with Dr. Vekhnis's findings. Thus, the ALJ correctly applied the Grid rule at step five

## IV. <u>CONCLUSION</u>

For the reasons stated, the decision of the ALJ is **affirmed**.  An appropriate Order

accompanies this Opinion.

                                    <u>S/ Dennis M. Cavanaugh</u>
                                    Dennis M. Cavanaugh, U.S.D.J.

Date:          December   20  , 2010
Original:      Clerk's Office
cc:            All Counsel of Record
               File